**THOMAS E. MOSS**
UNITED STATES ATTORNEY
**JACK B. HAYCOCK**
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
801 EAST SHERMAN, #192
POCATELLO, IDAHO 83201
TELEPHONE: (208) 478-4166

U.S. COURTS
NOV 12 2002
REC'D ____ FILED ____
CAMERON S. BURKE
CLERK IDAHO

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>**ABEL HIDALGO,**<br>Defendant. | Cr. No. 02-043-E-BLW<br>**RULE 11 PLEA AGREEMENT** |

**TABLE OF CONTENTS**

I. GUILTY PLEA ..... 1
A. Summary of Terms ..... 1
B. Elements of the Crime ..... 1
C. Factual Basis ..... 2
II. SENTENCING FACTORS ..... 3
A. Maximum and Minimum Penalties ..... 3
B. Application of Sentencing Guidelines ..... 3
C. No Right to Withdraw Plea ..... 4
D. Recommendations and Requests ..... 4



OCT-29-02 05:42PM FROM-US ATTORNEY 2084784175 T-036 P.02/14 F-570
23

1. Agreement with Bannock County . . . . . 4

2. Acceptance of Responsibility . . . . . 4

E. Fines, Costs, and Restitution . . . . . 5

F. Special Assessment . . . . . 6

G. Supervised Release . . . . . 6

H. Providing Information for the Presentence Report . . . . . 6

III. WAIVER OF APPEAL RIGHTS . . . . . 6

IV. CONSEQUENCES OF VIOLATING AGREEMENT . . . . . 7

A. Government's Options . . . . . 7

B. Defendant's Waiver of Rights . . . . . 8

C. Perjury, False Statements, or Other Crimes . . . . . 9

V. MISCELLANEOUS . . . . . 9

A. No Other Terms . . . . . 9

B. Plea Agreement Acceptance Deadline . . . . . 9

VI. UNITED STATES' APPROVAL . . . . . 10

ACCEPTANCE BY DEFENDANT AND COUNSEL . . . . . 11




OCT-29-02 05:42PM FROM-US ATTORNEY 2084784175 T-036 P.03/14 F-570

## I. GUILTY PLEA

**A.** **Summary of Terms.** Pursuant to Rule 11(e)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the defendant, the attorney for the defendant, and the Government[1] agree that the defendant will plead guilty to Counts One and Two of the Information. More specifically, the parties agree as follows:

Count One charges the defendant with First Degree Murder of Leigha Tacunan, in violation of Title 18 U.S.C. § 1111.

Count Two charges the defendant with First Degree Murder of Margaret Fellows, in violation of Title 18 U.S.C. § 1111.

Upon acceptance of the defendant's guilty plea(s), and the defendant's full compliance with the other terms of this Agreement, the Government agrees to the terms of the Agreement.

**B.** **Elements of the Crime.** The elements of the crime of First Degree Murder, as charged in Count One, are as follows:

1. That the defendant, with malice aforethought;
2. Unlawfully, and;
3. Willfully, deliberately, maliciously, and with premeditation;
4. Killed Leigha Tacunan, and did so;
5. By shooting her with a .45 caliber handgun.

The elements of the crime First Degree Murder, as charged in Count Two, are as follows:

1. That the defendant, with malice aforethought;
2. Unlawfully, and;
3. Willfully, deliberately, maliciously, and with premeditation;
4. Killed Margaret Fellows, and did so;
5. By shooting her with a .45 caliber handgun.

---

[1]The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.



OCT-29-02 08:43PM FROM-US ATTORNEY 2084784175 T-036 P.04/14 F-570

C. **<u>Factual Basis</u>.** If this matter were to proceed to trial, the Government and the defendant agree that the following facts would be proven beyond a reasonable doubt, which facts accurately represent the defendant's readily provable offense conduct. This factual summary is not intended to detail all relevant conduct, or cover all specific offense characteristics, which will be determined by the Court after its consideration of the Presentence Report.

On January 31, 2002, police at the Fort Hall Shoshone-Bannock Indian Reservation were called to the Margaret Fellows residence near Lodge and Philbin Roads on the Fort Hall Reservation. They observed the bodies of two adult women inside the residence and later discovered the body of a male infant in a bedroom. Investigation showed that the women, Margaret Fellows and Leigha Tacunan, were killed by multiple gunshots. Nine .45 caliber shell casings were recovered inside the house. The infant, Deland Schmidt, was killed by blunt force trauma to the head and chest.

Investigation led to Ramon Ortiz and Rafael Ochoa, both of whom said they had driven Abel Hidalgo to the Fellows' residence on January 29th. They said Hidalgo had a gun, a .45 caliber Llama, and entered the house alone. After a few minutes, Ortiz and Ochoa heard gunshots and Hidalgo came out of the house and got in the car. Hidalgo said he had killed the women. They drove to the residence of Sal Vialpondo in Chubbuck where Hidalgo changed his clothes and washed his hands with hairspray commenting that the hairspray would remove gunshot residue on his hands. Hidalgo put on clothing provided by Vialpondo. Hidalgo disassembled the gun and threw the various pieces of it onto the side of Interstate 15 and Highway 30 while they were driving. Hidalgo, Ortiz and Ochoa returned to the Blackfoot area.

Vialpondo later disposed of most of Hidalgo's clothing in a dumpster at a business in Pocatello. Police recovered that clothing and also recovered Hidalgo's leather jacket that Vialpondo had given to another individual.



OCT-29-02 05:43PM FROM-US ATTORNEY 2084784175 T-036 P.05/14 F-570

The clothing in the dumpster and the leather jacket were tested by the Federal Bureau of Investigation laboratory in Washington, D.C. and found to have traces of gunshot residue on them.

Police recovered various pieces of a Llama .45 caliber semi-automatic handgun along Highway 30 and Interstate 15. These pieces were assembled and tested at the FBI laboratory and found to be consistent with the shell casings found at the scene.

Police interviewed Michelle Avery, Hidalgo's half-sister. She said that on January 28, 2002, Hidalgo called Avery, asking her or her husband to buy him bullets. She declined. On January, 29, 2002, Hidalgo called between 8:00 p.m. and 10:00 p.m. and asked her to listen to her police scanner for anything going on in Blackfoot. On January 30, 2002, at about 8:15 a.m., he called Avery to ask if she had heard anything; she said no. On January 31, 2002, Avery heard about the murders. Hidalgo called her after the 10:00 p.m. news and asked her to let him know if she heard anything because he wanted "to make sure they were both dead." On February 1, Avery talked to Hidalgo; he said that the baby was not dead and that "we left it." He said "they deserved what they got."

Michelle Avery talked to Hidalgo on three occasions at the Bannock county jail after his arrest.

## II. SENTENCING FACTORS

**A. Maximum and Minimum Penalties.** A violation of 18 U.S.C. § 1111, as charged in Counts One and Two, is punishable by a term of imprisonment of life, a maximum fine of $250,000, and a mandatory term of supervised release of at least five (5) years, on each count.

**B. Application of Sentencing Guidelines.** Defendant understands that he/she will be sentenced under the Federal Sentencing Guidelines and that: (1) the sentence has not yet been determined by the District Judge; (2) any estimate of the likely sentence received from any

source is a prediction and not a promise, and (3) the District Judge has the final authority to decide what the sentence will be.

The defendant also understands that the Court will determine the applicable sentencing factors at sentencing and that the Court's determination will affect the sentence range under the Sentencing Guidelines. While the Court may take the recommendations of the parties into account in determining the sentence to be imposed, the Court has complete discretion to impose a sentence other than the sentence recommended, including the maximum sentence possible for the crimes to which defendant has pled.

**C. No Right to Withdraw Plea.** The defendant understands that the Court is not bound to follow any recommendations or requests made by the parties. If the Court refuses to follow such recommendations or requests, the defendant will not be given the opportunity to withdraw his plea(s).

**D. Recommendations and Requests**

**1. Agreement with Bannock County.** The parties understand that the United States does not have jurisdiction to prosecute the death of Deland Schmidt under 18 U.S.C. § 1152 because he was not a tribal member and is apparently not eligible for tribal enrollment, and the defendant is not an Indian. Therefore, the Bannock County Prosecuting Attorney has jurisdiction over the death of Deland Schmidt. The parties and Bannock County Prosecuting Attorney agree that if the defendant receives a life sentence in this court, the Bannock County Prosecuting Attorney will not file a murder charge against the defendant for the death of Deland Schmidt. The parties understand that the defendant does not admit any role in the death of Deland Schmidt, but they agree that the court may take into account all facts surrounding the deaths of Leigha Tacunan and Margaret Fellows, including the death of Deland Schmidt, in imposing sentence.

**2. Acceptance of Responsibility.** Unless the Government learns of new information to the contrary, defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under Section 3E1.1(a) of the Sentencing Guidelines, if the



OCT-29-02 05:43PM FROM-US ATTORNEY 2084784175 T-036 P.07/14 F-570

defendant accepts responsibility for the offense by <u>truthfully admitting the defendant's participation in the offense</u>. The Government will recommend an additional one-level reduction in the combined offense level, under section 3E1.1(6), if the following conditions are met: the defendant qualifies for a decrease under section 3E1.1(a); the offense is level 16 or greater; and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps: (1) timely providing complete information to the government concerning his own involvement in the offense; <u>**or**</u> (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.

If, at any time prior to imposition of sentence, the Defendant fails to meet the criteria set out in Section 3E1.1 of the Sentencing Guidelines, or acts in a manner inconsistent with acceptance of responsibility, the Government will not make such a recommendation or, if one has already been made, it will withdraw the recommendation. The criteria and acts which are inconsistent with acceptance of responsibility include: (1) failure to admit a complete factual basis for the plea at the time it is entered, or (2) denial of involvement in the offense, giving conflicting statements about that involvement, or being untruthful with the Court or Probation Officer, or (3) failure to appear in Court, or (4) engaging in any additional criminal conduct prior to sentencing, or (5) attempting to withdraw the plea(s).

E. <u>**Fines, Costs, and Restitution.**</u> Unless the Court determines that the defendant will not reasonably be able to pay a fine, or that paying a fine will unduly burden any of the defendant's dependents, a fine shall be imposed. There is no agreement as to the amount of the fine. The Court may also order the defendant to pay the costs of imprisonment, probation, and supervised release. In addition to imposing a fine, the Court, pursuant to 18 U.S.C. §§ 3563(b)(3), 3583, and 3663-64, and Section 5E1.1 of the Sentencing Guidelines, may order defendant to pay restitution in an amount equal to the loss caused to any victim(s) of the offense(s) charged in the Indictment.

F. **Special Assessment.** Defendant will pay a special assessment of $100 per count, in addition to any fine imposed. This assessment will be paid by defendant before sentence is imposed, and defendant will furnish a receipt at sentencing. Payment is to be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 W. Fort Street, Fourth Floor, Boise, ID 83724.

G. **Supervised Release.** The defendant will be sentenced to a term of supervised release to be served after incarceration. The defendant's term of supervised release will be a specific (i.e., a determinate) term chosen by the Court at sentencing. The combination of prison time and supervised release is permitted, by law, to exceed the maximum term of incarceration allowed under the statute(s) that defendant is pleading guilty to violating. Violation of any condition of supervised release may result in defendant being imprisoned for the entire term of supervised release or being prosecuted for contempt of court under 18 U.S.C. § 401(3).

H. **Providing Information for the Presentence Report.** The defendant agrees to provide all material financial and other information as may be requested by a representative of the United States Probation Department for their use in preparing a Presentence Report. Failure to execute releases and/or provide such material information as may be required is a violation of the terms of this Agreement, and will relieve the Government of its obligations as set forth in this Agreement, and may subject the defendant to an enhancement under Guidelines Section 3C1.1, or provide grounds for an upward departure under Section 5K2.0 of the Sentencing Guidelines, but will not constitute grounds for withdrawing the plea of guilty.

## III. WAIVER OF APPEAL RIGHTS

Defendant is pleading guilty voluntarily and intends to give up (waive) all appeal and post-conviction rights he may have regarding both his conviction and his sentence in exchange for the other terms of this agreement. Therefore, defendant promises not to appeal or otherwise contest his conviction or sentence on any ground, except for those contained in Title 18 U.S.C. § 3742, and the defendant promises not to file any post-conviction proceeding, except for a proceeding authorized by Title 18 U.S.C. § 2255, alleging ineffective assistance of counsel.



OCT-29-02 05:44PM FROM-US ATTORNEY 2084784175 T-036 P.09/14 F-570

If the defendant knowingly violates any of the terms of this agreement, any guilty plea(s) by the defendant, and any judgment and/or sentence based thereon, shall remain in full force and effect and will not be the subject of any legal challenge by the defendant on appeal or collateral attack.

The defendant further understands that nothing in this Plea Agreement shall affect the Government's right and/or duty to appeal as set forth in Title 18 U.S.C. § 3742(b).

The government may defend any action of the district court on appeal.

## IV. CONSEQUENCES OF VIOLATING AGREEMENT

**A. <u>Government's Options.</u>** If the defendant fails to comply with any obligation or promise pursuant to this Agreement, the Government may withdraw from the Agreement in its entirety. In such an event, the defendant understands that he will not be permitted to withdraw his guilty plea(s).

The defendant's violation of this Agreement will also relieve the Government of any obligation not to prosecute the defendant on other charges, including any charges dismissed as part of this Agreement, or any other offenses known to the Government for which he is responsible, including perjury and obstruction of justice.

The defendant further understands and agrees that if defendant does not enter a valid and acceptable plea, the Government will move to further continue the trial now set. The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. §§3161(h)(1)(I), (h)(3)(A), or (h)(8)(A). This continuance will be necessary to allow the Government adequate time to prepare for trial.

If the defendant breaches this Agreement after sentence is imposed, the Government will have the right to move to vacate the defendant's conviction(s) so that such charge(s) may be re-prosecuted.

If there is a dispute regarding the obligations of the parties under this Agreement. the United States District Court shall determine whether the Government or the defendant has failed to comply with this Agreement, including whether the defendant has been truthful.



OCT-29-02 05:44PM FROM-US ATTORNEY 2084784175 T-036 P.10/14 F-570

B. **Defendant's Waiver of Rights.** Defendant agrees that if defendant fails to keep any promise made in this Agreement, defendant gives up: (1) the right not to be placed twice in jeopardy for the offense(s) to which defendant entered a plea of guilty or which were dismissed under this Agreement; (2) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner for any charge that is brought as a result of defendant's failure to keep this Agreement; and (3) the right to be charged within the applicable statute of limitations period for any charge that is brought as a result of defendant's failure to keep this Agreement, and on which the statute of limitations expired after defendant entered into this Agreement.

Furthermore, the defendant understands that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial and he will have waived (given up) his right to a trial as well as the following rights associated with a trial: that he has a right to plead not guilty to the offense(s) charged against him and to persist in that plea; that he has the right to a trial by jury; that at trial he would be presumed innocent and the government would have to prove guilt beyond a reasonable doubt; and that he would have the right to assistance of counsel for his defense; the right to see and hear all the witnesses and have them cross-examined in his defense, the right to decline to testify unless he voluntarily elected to do so in his own defense, and the right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in his defense, or if he decided not to testify or put on any evidence, that these facts would not be held against him.

The defendant understands that by pleading guilty he waives (gives up) all of the rights set forth above. The defendant understands that if he enters a plea of guilty, no trial will, in fact, occur and that the only thing remaining to be done in this case is the sentencing hearing, at which only matters concerning the nature of the sentence to be imposed by the Court are to be heard and decided by the Court.



OCT-29-02 05:44PM FROM-US ATTORNEY 2084784175 T-036 P.11/14 F-570

C. **<u>Perjury, False Statements, or Other Crimes</u>.** The Government agrees to bring no further charges against the defendant arising from information learned during the investigation which brought about this plea, except for crimes of violence as defined in 18 U.S.C. §924(c)(3), if any. Nothing in this Agreement shall be construed to protect the defendant in any way from prosecution for perjury, obstruction of justice, false declaration, or false statements, as defined by the law of any sovereign, or any other offense committed by the defendant after the date of this Agreement. Any information, statements, documents, and evidence which the defendant provides the Government pursuant to this Agreement may be used against him in any such prosecutions.

## V. MISCELLANEOUS

A. **No Other Terms.** This Agreement incorporates the complete understanding between the parties, and no other promises have been made by the Government to the defendant or to the attorney for the defendant. This Agreement does not prevent any governmental agency from pursuing civil or administrative actions against defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho. If requested to do so by the defendant or his counsel, the Government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities.

B. **<u>Plea Agreement Acceptance Deadline</u>.** This plea offer is explicitly conditioned on acceptance of this plea Agreement no later than 5:00 p.m. on ____________________. It is defendant's sole and complete responsibility to notify the U.S. Attorney's Office of the acceptance of this Agreement by the date specified above in order for this offer to be effectively accepted.



OCT-29-02 05:44PM FROM-US ATTORNEY 2084784175 T-036 P.12/14 F-570

## VI. UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

THOMAS E. MOSS  
UNITED STATES ATTORNEY  
11-12-02  
DATE

JACK B. HAYCOCK  
Assistant United States Attorney  
11/12/02  
DATE

## APPROVAL BY BANNOCK COUNTY PROSECUTOR

I have reviewed this matter and the Plea Agreement. I agree on behalf of Bannock County to the terms and conditions in Paragraph II. (D)(1)

MARK HIEDEMAN  
Bannock County Prosecuting Attorney  
11/8/02  
DATE

## ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand the Agreement and its effect upon the potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, no person has, directly or indirectly, threatened or coerced me to do, or refrain from doing, anything in connection with any aspect of this case, including entering a plea of guilty. I am satisfied with my attorney's advice and representation in this case.

ABEL HIDALGO  
Defendant  
11/7/02  
DATE



OCT-29-02 05:45PM FROM-US ATTORNEY 2084784175 T-036 P.13/14 F-570

I have read this Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth above.

S. [signature] ______________________ 11-7-02
S. RICHARD RUBIN DATE
Attorney for the Defendant

[signature] ______________________ 11-5-02
FREDILYN SISON DATE
Attorney for the Defendant



OCT-29-02 05:45PM FROM-US ATTORNEY 2084784175 T-036 P.14/14 F-570